EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 11-04-GWU

DAVID L. RUSSELL, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

11-04  David L. Russell

        impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.       At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.       If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

    Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

11-04  David L. Russell

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work.  Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.  Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher

v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional

Case: 5:11-cv-00004-GWU  Doc #: 17  Filed: 02/23/12  Page: 5 of 10 - Page ID#: 283

impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, David L. Russell, was found by an Administrative Law Judge (ALJ) to have a "severe" impairment consisting of chronic low back pain secondary to degenerative disc disease of the lumbosacral spine, status post L4-L5 laminectomy and discectomy. (Tr. 14). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Russell retained the residual functional capacity to perform his past relevant work as a salesman and pizza deliverer, and therefore was not entitled to benefits. (Tr. 16-20). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 34, high school education, and work experience could perform any

jobs if he were capable of lifting 20 pounds occasionally and 10 pounds frequently, along with the ability to stand, walk, and sit six hours each in an eight-hour day, and also had the following non-exertional limitations.  He: (1) could never climb ladders, ropes, or scaffolds; (2) could occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; and (3) could not have any exposure to concentrated vibration, temperature extremes, or hazards.  (Appendix 38-39).[1]  The VE responded that such a person could perform two of the plaintiff's past jobs, and also testified to a large number of other unskilled jobs that would be available in the alternative.  (Appendix 39-40).  On the other hand, if the plaintiff's allegations regarding a need to lie down frequently during the day at unscheduled intervals and would experience a high level of pain five days a week were accepted, the VE testified that there would be no jobs he could perform.  (Appendix 40-41).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence, or if there was an error of law.  There is an additional issue in that the plaintiff's Date Last Insured (DLI) was December 31, 2009 (Tr. 221), meaning that he would have to demonstrate disability prior to that date in order to be entitled to benefits.  His SSI application is not affected.

---

[1] The transcription of the administrative hearing was originally incomplete in the main transcript, and the defendant submitted an appendix of the complete hearing with a different numbering system.  References to pages in the appendix will therefore be designated separately in the court's opinion.

11-04  David L. Russell

Mr. Russell alleged disability beginning September 2, 2006 as a result of a motor vehicle accident on December 30, 2005 which had caused herniated discs and nerve damage and had required back surgery.  (Tr. 225).  In May, 2007, he underwent an L4-L5 lumbar laminectomy with microdiscectomy after an MRI showed a herniation at that level with moderate to severe central canal and neural foraminal narrowing.  (Tr. 344, 352).  His attending surgeon, Dr. Robert Owen, noted that he recovered well after surgery and by October, 2007 he had normal strength and reflexes in the lower extremities except for a slightly diminished right Achilles reflex. (Tr. 359-60, 394-95).  Because he still appeared to have some back pain, Dr. Owen recommended treatment by a pain specialist and provided a work excuse, although no duration was given.  (Tr. 359, 394).  However, Mr. Russell apparently was not able to get Worker's Compensation approval to go to the pain clinic.  (Tr. 349).  An MRI of the lumbosacral in spine in October, 2007 showed postoperative changes at L4-L5 with no residual or recurrent disc herniations.  (Tr. 368, 403).

State agency physicians P. Saranga and James Ramsey reviewed the evidence on November 1, 2007 and January 16, 2008, respectively.  They agreed that Mr. Russell should be able to lift 20 pounds occasionally and 10 pounds frequently, stand, walk and sit six hours each in an eight-hour day, could occasionally stoop, crouch, crawl, and climb ladders, ropes, and scaffolds, and

11-04  David L. Russell

needed to avoid concentrated exposure to vibration.  (Tr. 405-11, 427-33).  These restrictions are consistent with the ALJ's functional capacity finding.[2]

The plaintiff, who is proceeding pro se before the court, essentially raises three issues.

First, he describes treatment he has received since the ALJ's decision, and provides phone numbers of medical providers, appearing to invite further investigation of his current condition.  However, this court's substantial evidence review concerns only evidence that was available to the ALJ.  Evidence of a subsequent deterioration or change in condition after the administrative decision is immaterial.  Wyatt v. Secretary of Health and Human Services, 974 F.2d 680, 685 (6th Cir. 1992).

---

[2]There is also a report from Dr. Robert K. Johnson who conducted a one-time examination for Worker's Compensation purposes on February 11, 2008.  (Tr. 436).  Dr. Johnson reviewed medical records including three MRI reports, and conducted a physical examination.  (Tr. 436-44).  He concluded that the plaintiff needed pain management care as well as additional nerve conduction testing to clarify his condition and asserted that he was unable to lift, walk, climb, bend, stoop, or carry, in addition to other limitations.  (Tr. 447).  As a "long shot possibility" he thought that the plaintiff might be able to find work in a sitting position with an opportunity to change positions frequently and rely on an external support, apparently on a part-time basis.  (Id.).  The ALJ referred to Dr. Johnson's report only in passing in the decision as it related to a vocational report by William Ellis.  (Tr. 15, 17).  Mr. Ellis reviewed Dr. Johnson's report and concluded that Mr. Russell was 100 percent vocationally disabled.  (Tr. 466-67).  Whatever might be said about the weight entitled to an examining source such as Dr. Johnson as opposed to the weight given to non-examining sources such as Drs. Saranga and Ramsey, the plaintiff has not even tangentially raised the issue in his brief.  Therefore, it must be considered to have been waived.

8

11-04 David L. Russell

Second, Mr. Russell alleges that it was discriminatory for the ALJ to ask questions at his hearing regarding his incarceration for selling pain medication. The plaintiff bears the burden of overcoming the presumption that policymakers exercising decisionmaking power exercise it with honesty and integrity. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 US 402, 420 (1971). "[A]ny alleged prejudice on the part of the decision maker must be evident from the record and cannot be based on speculation or inference." Navistar International Transportation Corp. v. United States Environmental Protection Agency, 941 F.2d 1339, 1360 (6th Cir. 1991). The plaintiff has failed to carry his burden in the present case. As the ALJ pointed out in his decision, under the federal regulations, Mr. Russell was not eligible to receive disability benefits for the period of time he was in jail, April, 2009 through April, 2010. (Tr. 13-14). It was necessary for the ALJ to establish these dates at the hearing. (Tr. 30-31). In fact, it appears that the plaintiff had been jailed initially in 2008 in the Boyle County Jail for the same charge and was released before serving his sentence in 2009 and 2010. (Tr. 43-44). All of this information was necessary as part of the ALJ's role of fact finder. While the charges themselves had nothing to do with the plaintiff's disability, they did have relevance to his eligibility. Therefore, there was no error in this regard.

Mr. Russell's third argument is that he felt the ALJ did not ask him enough questions about his condition, "well being," and doctors. However, he was represented by an attorney at the administrative level and a review of the hearing

11-04  David L. Russell

testimony shows that the attorney spent a large part of the hearing questioning him about how he felt and what he believed he could do. (Appendix 23-31). There was no heightened duty by the ALJ to develop the case as there would have been with an unrepresented plaintiff. <u>Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983). It does not matter whether the plaintiff's testimony was elicited by the ALJ or his attorney, because it is apparent that he was able to state his side of the case. In any event, the plaintiff does not cite any specific fact which was not brought out at the hearing that might have changed the outcome.

The decision will be affirmed.

This the 23rd day of February, 2012.

Signed By:

<u>G. Wix Unthank</u>

United States Senior Judge